Mia Farber (SBN 131467)
*Mia.Farber@jacksonlewis.com*
Nicky Jatana (SBN 197682)
*Nicky.Jatana@jacksonlewis.com*
Buck N. Haddix (SBN 295334)
*Buck.Haddix@jacksonlewis.com*
JACKSON LEWIS P.C.
725 South Figueroa Street, Suite 2500
Los Angeles, California  90017-5408
Telephone:  (213) 689-0404
Facsimile:   (213) 689-0430

Attorneys for Defendant
MCKESSON CORPORATION

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| SOVATANA SAUT and JOHN HISATO NAKATANI, individually, and on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br>v.<br><br>MCKESSON CORPORATION, a Delaware corporation; and DOES 1 through 50, inclusive,<br><br>Defendants. | **CASE NO.:**<br><br>**DEFENDANT MCKESSON CORPORATION'S NOTICE OF REMOVAL OF ACTION TO THE UNITED STATES DISTRICT COURT FOR THE CENTRAL DISTRICT OF CALIFORNIA PURSUANT TO 28 U.S.C. §§ 1332, 1441, 1446, and 1453 (CAFA)**<br><br>(Filed concurrently with Civil Case Cover Sheet; Declarations of Mallory Kiefer and Buck N. Haddix; Corporate Disclosure Statement; and Notice of Interested Parties) |

*///*
*///*
*///*
*///*
*///*
*///*
*///*

**TO THE CLERK OF THE U.S. DISTRICT COURT FOR THE CENTRAL DISTRICT OF CALIFORNIA, PLAINTIFFS SOVATANA SAUT AND JOHN HISATO NAKATANI, AND THEIR COUNSEL OF RECORD:**

PLEASE TAKE NOTICE that Defendant MCKESSON CORPORATION ("Defendant" or "McKesson") hereby invokes this Court's jurisdiction under the provisions of 28 U.S.C. §§ 1332(d), 1441, 1446 and 1453, and removes the above-entitled action from the Superior Court of the State of California for the County of Los Angeles based on the Class Action Fairness Act of 2005 ("CAFA"). McKesson submits this Notice of Removal without waiving any defenses to the claims asserted by Plaintiffs SOVATANA SAUT and JOHN HISATO NAKATANI ("Plaintiffs") and without conceding Plaintiffs have pled claims upon which relief can be granted. This removal is based on the following grounds:

**SERVICE AND PLEADINGS FILED IN STATE COURT**

1. On June 27, 2022, Plaintiffs filed an unverified Class Action Complaint against McKesson in the Superior Court of the State of California for the County of Los Angeles entitled *SOVATANA SAUT and JOHN HISATO NAKATANI, individually and on behalf of themselves and all others similarly situated, Plaintiffs, v. MCKESSON CORPORATION, a Delaware corporation; and DOES 1-50, inclusive, Defendants*, Case No. 22STCV20831, which sets forth the following nine (9) causes of action: (1) failure to pay minimum wages; (2) failure to pay overtime owed; (3) failure to provide lawful meal periods; (4) failure to authorize and permit rest periods; (5) failure to timely pay wages during employment; (6) failure to timely pay wages owed upon separation from employment; (7) failure to reimburse necessary expenses; (8) Knowing and Intentional Failure to Comply with Itemized Wage Statement Provisions; and (9) unfair competition (the "Complaint"). As stated in paragraphs 1, 17 and 23 therein, the Complaint is brought as a class action on behalf of Plaintiffs and any and all persons who are or were employed in hourly, non-exempt positions by Defendant, either directly or indirectly, in the State of California at any time from four years prior to the filing of this Complaint through resolution or trial of the matter.

2. McKesson first received Plaintiffs' Summons, Complaint and Civil Case Cover Sheet when it was served on July 12, 2022. Declaration of Buck N. Haddix ("Haddix Decl.") at ¶ 3. True and

correct copies of the Summons, Complaint, Civil Case Cover Sheet, and related court documents received by McKesson on July 12, 2022 are attached as **Exhibit "A"** to the Haddix Declaration.

3. On July 6, 2022, Judge Carolyn B. Kuhl of the Superior Court of California, County of Los Angeles, issued an Initial Status Conference Order and a Court Order Regarding Newly Filed Class Action which the Court Clerk served on Plaintiffs' counsel. True and correct copies of the Initial Status Conference Order, the Court Order Regarding Newly Filed Class Action and the Clerk's Certificate of Mailing are attached to the Haddix Declaration as **Exhibit "B."** *Id.* at ¶ 4.

4. On August 11, 2022, McKesson filed and served an Answer to the Complaint in Los Angeles County Superior Court, making a general denial as permitted by California Code of Civil Procedure § 431.30(d) and asserting various affirmative defenses. *Id.* at ¶ 5. A true and correct copy of McKesson's Answer is attached as **Exhibit "C"** to the Haddix Declaration.

5. As of today, **Exhibits "A," "B"** and **"C"** to the Haddix Declaration constitute all of the pleadings that have been filed or served in this action, and no further proceedings have occurred in the state court. *Id.* at ¶ 6.

## TIMELINESS OF REMOVAL

6. This Notice of Removal has been filed within thirty (30) days after McKesson was first served with a copy of Plaintiffs' Summons and Complaint on July 12, 2022. *Id.* at ¶ 3. Therefore, it has been filed within the time period mandated by 28 U.S.C. § 1446(b). *Murphy Bros. v. Michetti Pipe Stringing*, 526 U.S. 344, 354 (1999) ("[T]he defendant's period for removal will be no less than 30 days from service, and in some categories, it will be more than 30 days from service, depending on when the complaint is received.").

## VENUE IS PROPER

7. This action was filed in the Superior Court in and for the County of Los Angeles. Thus, pursuant to 28 U.S.C. §§ 84(c)(2) and 1441(a), McKesson is removing this action to the United States District Court for the Central District of California as the district "embracing the place where [the] action is pending."

///

///

3

# REMOVAL IS PROPER BASED ON THE CLASS ACTION FAIRNESS ACT

8. Removal of this action is proper under CAFA, 28 U.S.C. §§ 1332 *et seq.* Section 4 of CAFA, 28 U.S.C. § 1332(d)(2), has been amended to read, in relevant part:

> The district courts shall have original jurisdiction of any civil action in which the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs, and is a class action in which – (A) any member of a class of plaintiffs is a citizen of a State different from any defendant.

9. In addition, CAFA provides for jurisdiction in the district courts only where the proposed class involves 100 or more members, or where the primary defendants are not States, State officials, or other governmental entities. 28 U.S.C. § 1332(d)(5).

10. As set forth below, this is a civil action over which this Court has original jurisdiction under 28 U.S.C. § 1332(d), in that it is a civil action filed as a class action involving more than 100 members, the matter in controversy – based on the allegations in the Complaint – exceeds the sum of $5,000,000, exclusive of interest and costs, and Plaintiffs are citizens of a state different from Defendant. *See* 28 U.S.C. §§ 1332(d) and 1453. Furthermore, McKesson is not a State, State official, or other governmental entity.

## A. THE PUTATIVE CLASS CONTAINS MORE THAN 100 MEMBERS.

11. CAFA provides that the district courts shall not have jurisdiction over class actions where "the number of members of all proposed plaintiff classes in the aggregate is less than 100." 28 U.S.C. § 1332(d)(5).

12. Here, Plaintiffs' Complaint asserts that the Putative Class consists of "hundreds of Class Members" and that "[a]ccounting for employee turnover during the relevant periods necessarily increases this number substantially." Haddix Decl. at ¶ 3, **Exhibit "A"** ["Complaint"] at ¶¶ 9, 59.[1] Further, McKesson's records identify in excess of 636 individuals who have been employed by McKesson as non-exempt employees in the State of California between June 27, 2018 (four years prior to the filing of the Complaint) and the present (collectively referred to herein as "Putative Class Members" or the "Putative Class"; the period between June 27, 2018 and the present is referred to herein as the

---

[1] McKesson denies each and every allegation set forth by Plaintiffs in the Complaint and denies that Plaintiffs or Putative Class Members are entitled to any compensatory or statutory damages, injunctive relief, restitution, civil penalties, attorneys' fees, or any other relief. McKesson also denies that this action can proceed as a class action. Notwithstanding the above, removal of this action is proper given that removal is based on the allegations asserted in the Complaint.

"Putative Class Period").[2] Declaration of Mallory Kiefer ("Kiefer Decl.") at ¶¶ 7, 8.[3] Accordingly, the numerosity requirement for jurisdiction under CAFA is satisfied.

**B.     NONE OF THE NAMED DEFENDANTS ARE GOVERNMENT ENTITIES.**

13.     McKesson is not a State, a State official, or any other governmental entity. Kiefer Decl. at ¶ 3.

**C.     MINIMAL DIVERSITY IS SATISFIED UNDER CAFA.**

14.     The standard for establishing diversity of citizenship under CAFA is different than diversity jurisdiction under 28 U.S.C. 1332(a)-(c). CAFA's diversity requirement is satisfied when there is minimal diversity, *i.e.*, when at least one member of a class of plaintiffs is a citizen of a state in which none of the defendants are citizens. 28 U.S.C. § 1332(d)(2); *see Snyder v. Harris*, 394 U.S. 332, 340 (1969) ("if one member of a class is of diverse citizenship from the class' opponent, and no nondiverse members are named parties, the suit may be brought in federal court even though all other members of the class are citizens of the same State as the defendant"); *United Steel, Paper & Forestry, Rubber, Mfg., Energy, Allied Indus. & Serv. Workers Int'l Union, AFL-CIO, CLC v. Shell Oil Co.*, 602 F.3d 1087, 1090-91 (holding that to achieve its purposes, CAFA provides expanded original diversity jurisdiction for class actions meeting the minimal diversity requirement set forth in 28 U.S.C. § 1332(d)(2)); *Bradford v. Bank of Am. Corp.*, No. CV 15-5201-GHK (JCx), 2015 U.S. Dist. LEXIS 120800, at *13 (C.D. Cal. Sep. 10, 2015) ("[defendant] needed only to establish that one plaintiff was a citizen of a different state from any one defendant at the time of removal").

15.     Citizenship of the parties is determined by their citizenship status at the action's commencement. *See Mann v. City of Tucson*, 782 F.2d 790 (9th Cir. 1986).

16.     For individuals, citizenship is determined by a person's domicile. *Lew v. Moss*, 797 F.2d 747, 749 (9th Cir. 1986). "A person's domicile is her permanent home, where she resides with the intention to remain or to which she intends to return." *Kanter v. Warner-Lambert Co.*, 265 F.3d 853, 857 (9th Cir. 2001). While residence and citizenship are not the same, a person's place of residence is

---

[2]     Although the Putative Class Period spans from June 27, 2018 to the present, all calculations used in this Notice of Removal are based on data for 636 Putative Class Members who worked for McKesson in California from June 27, 2018 to July 30, 2022. *See* Kiefer Decl. ¶¶ 7, 8.

*prima facie* evidence of his or her citizenship. *State Farm Mut. Auto. Ins. Co. v. Dyer*, 19 F.3d 514, 519-20 (10th Cir. 1994) (allegation by party in state court complaint of residency "created a presumption of continuing residence in [state] and put the burden of coming forward with contrary evidence on the party seeking to prove otherwise"); *see also Smith v. Simmons*, 2008 U.S. Dist. LEXIS 21162, at *22 (E.D. Cal. 2008). Furthermore, a person's intention to remain may be established by his or her place of employment. *Youn Kyung Park v. Holder*, 572 F.3d 619, 625 (9th Cir. 2009); *see also Francisco v. Emeritus Corp.,* No. CV 17-02871-BRO (SSx), 2017 U.S. Dist. LEXIS 90131, at *10 (C.D. Cal. June 12, 2017) ("Plaintiff's residence and employment in California are sufficient evidence of his intent to remain in California.").

17. McKesson is informed and believes, as alleged by Plaintiffs in the Complaint, that Plaintiffs, at the time this action was commenced, and still are, residents and citizens of the State of California. **Exhibit "A"** ["Complaint"] at ¶¶ 14, 15.

18. For purposes of removal under CAFA, a corporation is a citizen of any state where it is incorporated and of the state where it has its principal place of business. 28 U.S.C. § 1332(c). With respect to ascertaining a corporation's principal place of business, the United States Supreme Court has adopted the "nerve center test." *Hertz Corp. v. Friend*, 559 U.S. 77, 80-81 (2010). Under the nerve center test, a corporation's principal place of business is where a corporation's high-level officers direct, control and coordinate the corporation's activities. *Id*. A corporation can only have one "nerve center." *Id.* at 93-94. In evaluating where a corporation's "nerve center" is located, courts will look to the center of overall direction, control, and coordination of the company and will no longer weigh corporate functions, assets, or revenues in each state. *Id*.

19. At the time Plaintiffs filed the Complaint and presently, McKesson has been a corporation organized under the laws of the State of Delaware. Kiefer Decl. at ¶ 4. At all relevant times, McKesson's company headquarters, and thus its principal place of business, has been in the State of Texas. *Id.* McKesson's headquarters in Irving, Texas is where the majority of its executive, administrative, financial and management functions are conducted, and from where the majority of its high-level officers direct, control, coordinate and control the company's operations and activities. *Id.* at ¶ 5. Most of McKesson's executive officers maintain their offices in the State of Texas. *Id.* Accordingly, for purposes of removal

under CAFA, McKesson is a citizen of the States of Delaware and Texas, and is not a citizen of the State of California.

20.     Given the above, minimal diversity exists under CAFA because at least one member of the Putative Class (either Plaintiff) was, at the time this action was commenced – and is still believed to be – a citizen of the State of California, while Defendant was – and still is – a citizen of the States Delaware and Texas.[4]  28 U.S.C. § 1332(d)(2).

**D.    THE AMOUNT IN CONTROVERSY EXCEEDS $5,000,000 BASED ON A PLAUSIBLE READING OF THE ALLEGATIONS OF THE COMPLAINT.**

21.     Under CAFA, the claims of the individual members in a class action are aggregated to determine if the amount in controversy exceeds the sum or value of $5,000,000.  *See* 28 U.S.C. § 1332(d)(6).  Congress intended federal jurisdiction to be appropriate under CAFA "if the value of the matter in litigation exceeds $5,000,000 either from the viewpoint of the plaintiff or the viewpoint of the defendant, and regardless of the type of relief sought (e.g., damages, injunctive relief, or declaratory relief)."  Sen. Jud. Comm. Rep., S. REP. 109-14, at 42.  Moreover, any doubts regarding the maintenance of interstate class actions in state or federal court should be resolved in favor of federal jurisdiction.  S. Rep. 109-14, at 42-43 ("[I]f a federal court is uncertain about whether 'all matters in controversy' in a purported class action 'do not in the aggregate exceed the sum or value of $5,000,000, the court should err in favor of exercising jurisdiction over the case . . . .  Overall, new section 1332(d) is intended to expand substantially federal court jurisdiction over class actions.  Its provisions should be read broadly . . . .").

22.     In determining whether the amount in controversy exceeds $5,000,000, the Court must presume Plaintiffs will prevail on each and every one of their claims.  *Kenneth Rothschild Trust v. Morgan Stanley Dean Witter*, 199 F.Supp. 993, 1001 (C.D. Cal. 2002) (*citing Burns v. Windsor Ins. Co.*, 31 F.3d 1092, 1096 (11th Cir. 1994) (the amount in controversy analysis presumes that "plaintiff prevails on liability"); *Angus v. Shiley Inc.*, 989 F.2d 142, 146 (3d Cir. 1993) ("the amount in controversy is not measured by the low end of an open-ended claim")).  Moreover, the argument and facts set forth herein may appropriately be considered in determining whether the jurisdictional amount

---

[4]     The citizenship of the Doe defendants is immaterial for the purpose of determining whether CAFA's minimal diversity requirements are satisfied under CAFA.  *See* 28 U.S.C. § 1441(a); *see also Serrano v. 180 Connect, Inc.*, 478 F.3d 1018, 1021 (9th Cir. 2007) ("under CAFA, complete diversity is not required; 'minimal diversity' suffices").

7


under CAFA, McKesson is a citizen of the States of Delaware and Texas, and is not a citizen of the State of California.

20.     Given the above, minimal diversity exists under CAFA because at least one member of the Putative Class (either Plaintiff) was, at the time this action was commenced – and is still believed to be – a citizen of the State of California, while Defendant was – and still is – a citizen of the States Delaware and Texas.[4]  28 U.S.C. § 1332(d)(2).

**D.    THE AMOUNT IN CONTROVERSY EXCEEDS $5,000,000 BASED ON A PLAUSIBLE READING OF THE ALLEGATIONS OF THE COMPLAINT.**

21.     Under CAFA, the claims of the individual members in a class action are aggregated to determine if the amount in controversy exceeds the sum or value of $5,000,000.  *See* 28 U.S.C. § 1332(d)(6).  Congress intended federal jurisdiction to be appropriate under CAFA "if the value of the matter in litigation exceeds $5,000,000 either from the viewpoint of the plaintiff or the viewpoint of the defendant, and regardless of the type of relief sought (e.g., damages, injunctive relief, or declaratory relief)."  Sen. Jud. Comm. Rep., S. REP. 109-14, at 42.  Moreover, any doubts regarding the maintenance of interstate class actions in state or federal court should be resolved in favor of federal jurisdiction.  S. Rep. 109-14, at 42-43 ("[I]f a federal court is uncertain about whether 'all matters in controversy' in a purported class action 'do not in the aggregate exceed the sum or value of $5,000,000, the court should err in favor of exercising jurisdiction over the case . . . .  Overall, new section 1332(d) is intended to expand substantially federal court jurisdiction over class actions.  Its provisions should be read broadly . . . .").

22.     In determining whether the amount in controversy exceeds $5,000,000, the Court must presume Plaintiffs will prevail on each and every one of their claims.  *Kenneth Rothschild Trust v. Morgan Stanley Dean Witter*, 199 F.Supp. 993, 1001 (C.D. Cal. 2002) (*citing Burns v. Windsor Ins. Co.*, 31 F.3d 1092, 1096 (11th Cir. 1994) (the amount in controversy analysis presumes that "plaintiff prevails on liability"); *Angus v. Shiley Inc.*, 989 F.2d 142, 146 (3d Cir. 1993) ("the amount in controversy is not measured by the low end of an open-ended claim")).  Moreover, the argument and facts set forth herein may appropriately be considered in determining whether the jurisdictional amount

---

[4]     The citizenship of the Doe defendants is immaterial for the purpose of determining whether CAFA's minimal diversity requirements are satisfied under CAFA.  *See* 28 U.S.C. § 1441(a); *see also Serrano v. 180 Connect, Inc.*, 478 F.3d 1018, 1021 (9th Cir. 2007) ("under CAFA, complete diversity is not required; 'minimal diversity' suffices").

in controversy is satisfied. *Cohn v. Petsmart, Inc.*, 281 F.3d 837, 843, n.1 (9th Cir. 2002) (*citing Willingham v. Morgan*, 395 U.S. 402, 407 n.3 (1969)).

23. Notably, "[t]here is no obligation by defendant to support removal with production of extensive business records to prove or disprove liability and/or damages with respect to plaintiff or the putative class members at this premature (pre-certification) stage of the litigation." *Muniz v. Pilot Travel Ctrs. LLC*, 2007 U.S. Dist. LEXIS 31515, at *15 (E.D. Cal. Apr. 30, 2007). Rather, a defendant seeking removal must prove by a preponderance of the evidence that the aggregate amount in controversy exceeds the jurisdictional minimum. *Jauregui v. Roadrunner Transp. Servs.*, 28 F.4th 989, 993-94 (9th Cir. 2022) (finding that the district court erred in imposing – both explicitly and in its analysis – a presumption against CAFA jurisdiction, and holding instead that the defendant was only required to show the amount in controversy by a preponderance of evidence); *Arias v. Residence Inn*, 936 F.3d 920, 922, 925 (9th Cir. 2019) (the removing defendant may rely on reasonable assumptions in estimating the amount in controversy, which "need not be proven"); *Rodriguez v. AT&T Mobility Servs. Ltd. Liab. Co.*, 728 F.3d 975, 977 (9th Cir. 2013) ("the proper burden of proof imposed upon a defendant to establish the amount in controversy is the preponderance of the evidence standard"); *see Lewis v. Verizon Commc'ns, Inc.*, 627 F.3d 395, 400 (9th Cir. 2010) ("The amount in controversy is simply an estimate of the total amount in dispute, not a prospective assessment of defendant's liability."). "[T]his rule is not altered even if plaintiffs affirmatively contend in their complaint that damages do not exceed $5 million." *Ibarra v. Manheim Invs., Inc.*, 775 F.3d 1193, 1197 (9th Cir. 2015) (*citing Standard Fire Insurance Co. v. Knowles*, 568 U.S. 588, 594-96 (2013)). "The Supreme Court has held that when a class-action plaintiff stipulates, prior to certification of the class, that he, and the class he seeks to represent, will not seek damages that exceed $5 million in total, the district court should ignore that stipulation when assessing the amount in controversy. This is so because although individual plaintiffs are the masters of their complaints and may stipulate to amounts at issue that fall below the federal jurisdictional requirement, the same is not true for a putative class representative, who cannot yet bind the absent class." *Arias*, 936 F.3d at 928-29 (*citing Standard Fire Insurance Co.*, 568 U.S. at 595-96 (internal quotations and citations omitted)).

24. In *Dart Cherokee Basin Operating Company, LLC v. Owens*, the United States Supreme Court held that "a defendant's notice of removal need include only a *plausible* allegation that the amount

8

in controversy exceeds the jurisdictional threshold." 135 S. Ct. 547, 554 (2014) (emphasis added). Following *Dart*, the Ninth Circuit confirmed "a removing defendant's notice of removal need not contain evidentiary submissions but only plausible allegations of the jurisdictional elements," and further that "when a defendant's allegations of removal jurisdiction are challenged, the defendant's showing on the amount in controversy may rely on reasonable assumptions," which need not be proven. *Salter v. Quality Carriers, Inc.*, 974 F.3d 959, 963 (9th Cir. 2020) (citations and internal quotation marks omitted); *Arias*, 936 F.3d at 922, 925 (defendant may rely on reasonable assumptions in estimating amount in controversy, which "need not be proven"). Further, "'[n]o "antiremoval presumption attends cases invoking CAFA' because 'Congress enacted [CAFA] to facilitate adjudication of certain class actions in federal court.'" *Adams v. Toys 'R' US – Delaware, Inc.*, 2015 U.S. Dist. LEXIS 11338, at *5-6 (N.D. Cal. Jan. 29, 2015) *quoting Dart*, 135 S. Ct. at 554. On the contrary, courts are required to interpret CAFA's provisions broadly in favor of removal. *Jordan v. Nationstar Mortg. LLC*, 781 F.3d 1178, 1183-84 (9th Cir. 2015).

25. Moreover, if a plaintiff asserts statutory violations, the court must assume that the violation rate is 100% unless the plaintiff specifically alleges otherwise. *See Muniz v. Pilot Travel Ctrs. LLC*, 2007 U.S. Dist. LEXIS 31515, at *12-13 (E.D. Cal. Apr. 30, 2007) ("As these allegations reveal, plaintiff includes no fact-specific allegations that would result in a putative class or violation rate that is discernibly smaller than 100%, used by defendant in its calculations. Plaintiff is the 'master of [her] claim[s],' and if she wanted to avoid removal, she could have alleged facts specific to her claims which would narrow the scope of the putative class or the damages sought.") (*citing Caterpillar, Inc. v. Williams*, 482 U.S. 386, 392 (1987)); *see also Arreola v. The Finish Line*, No. 14- CV-03339-LHK, 2014 U.S. Dist. LEXIS 170464, at *12 (N.D. Cal. Dec. 9, 2014) ("District courts in the Ninth Circuit have permitted a defendant removing an action under CAFA to make assumptions when calculating the amount in controversy—such as assuming a 100 percent violation rate, or assuming that each member of the class will have experienced some type of violation—when those assumptions are reasonable in light of the allegations in the complaint."); *Coleman v. Estes Express Lines, Inc.*, 730 F. Supp. 2d 1141, 1149 (C.D. Cal. 2010) ("[C]ourts have assumed a 100% violation rate in calculating the amount in controversy when the complaint does not allege a more precise calculation.").

26. While Plaintiffs do not allege a specific amount in damages, their Complaint was filed as an "unlimited" jurisdiction civil case on behalf of the Putative Class. As such, Plaintiffs are claiming the monetary damages and restitution they are seeking exceeds the $25,000 minimum jurisdiction limits of the California Superior Court,[5] which is confirmed by the fact that they designated their case as "Unlimited (Amount demanded exceeds $25,000)" on their Civil Case Cover Sheet. Haddix Decl. at ¶ 3, **Exhibit "A"** [Civil Case Cover Sheet]. Plaintiffs further contend that their claims "are typical of those claims which could be alleged by any member of the Class and/or Subclasses, and the relief sought is typical of the relief which would be sought by each member of the Class and/or Subclasses in separate actions," and that "Defendants' policies and practices . . . affected each member of the Class and/or Subclasses similarly." Complaint at ¶ 18. Thus, based on the allegations in the Complaint, it is plausible that Plaintiffs are seeking at least $25,000 [the unlimited jurisdictional amount] per Putative Class Member, which places over **$15,900,000** in controversy ($25,000 x 636 Putative Class Members). Kiefer Decl. at ¶ 8; *see Abrego v. The Dow Chem. Co*., 443 F.3d 676, 689 (2006) (finding jurisdictional amount met where complaint sought no specific amount in damages but pled the amount in controversy to exceed $25,000 and there were 1,160 class members).

27. In the alternative, and without admitting Plaintiffs could recover any damages whatsoever, a plausible reading of the causes of action alleged in the Complaint[6] also places an aggregate amount in controversy exceeding $5,000,000, exclusive of attorneys' fees, interest, and costs, as follows:

   a. <u>First Cause of Action – Failure to Pay Minimum Wages</u>: Plaintiffs claim that "[a]t all times relevant, Plaintiffs and Class Members consistently worked hours for which they were not paid because Defendants frequently required Plaintiffs and the Class Members to work off the clock, including without limitation for Covid-19 screenings and security checks, and to wait in line to clock in." Complaint at ¶ 69. Plaintiffs further allege that "Defendants failed to pay at least minimum wage for all hours worked because, upon information and belief, Defendants rounded hours worked against Plaintiff and the Class Members' interests." Complaint at ¶ 71. Given these purported violations,

---

[5] *See* California Code of Civil Procedure §§ 86(a) and 88.
[6] *See e.g. Lucas v. Michael Kors (USA) Inc.,* No. CV 18-1608-MWF (MRWx), 2018 U.S. Dist. LEXIS 78510, at *8 (C.D. Cal. May 9, 2018) ("Defendants may use reasonable assumptions in calculating the amount in controversy for purposes of removal.").

Plaintiffs claim they and Putative Class Members "are entitled to recover from Defendant their unpaid wages, statutory penalties, reasonable attorneys' fees and costs in this action, and pre-judgment and post-judgment interest, as well as liquidated damages." Complaint at ¶ 73. Thus, based on the allegations in the Complaint, it is plausible that Plaintiffs are seeking to recover at least one hour of minimum wage per week for all Putative Class Members, which would place over **$1,407,318** in controversy in connection with their minimum wage claim ($11.00[7] minimum hourly wage rate x 1 hour per week x 63,969 workweeks plus an equal amount in liquidated damages). Kiefer Decl. at ¶ 8.

      b.    <u>Second Cause of Action – Failure to Pay Overtime Owed</u>: Plaintiffs assert that "[d]uring all relevant periods, Defendants had a uniform policy of requiring Plaintiffs and the Class members to work in excess of eight (8) hours in a workday and/or in excess of forty (40) hours in a workweek without compensating them at a rate of one and one-half (1.5) times their regular rate of pay," and "Defendants also failed to properly compensate Plaintiffs and the Class Members for hours worked in excess of twelve (12) hours in one (1) day, or eight (8) hours on the seventh (7th) day of a workweek." Complaint at ¶ 77. Plaintiffs also contend "[a]t all times relevant, Plaintiffs and Class Members consistently worked hours for which they were not paid because Plaintiffs and the Class Members were required to work off the clock– some of these hours were over eight (8) hours in one (1) workday or in excess of forty (40) hours in a workweek and should have been paid at the overtime rate." Complaint at ¶ 79. Plaintiffs further allege that "Defendants failed to incorporate all forms of compensation, including without limitation bonuses, differentials, gift cards, and incentives, into the regular rate for overtime purposes." Complaint at ¶ 82. Thus, based on the allegations in the Complaint, it is plausible that Plaintiffs are seeking to recover at least one hour of overtime wages per week per employee for all Putative Class Members, which would place **$2,172,928.19** in controversy in connection with their overtime claim, using the class time period and each putative class member's hourly pay rate.[8] Kiefer Decl. at ¶ 9.

---

[7] For purposes of calculating potential minimum wage damages in this Notice of Removal, McKesson conservatively utilized the lowest applicable minimum wage rate in effect during the Putative Class Period ($11.00 per hour). *See* California Department of Industrial Relations History of California Minimum Wage Chart (https://www.dir.ca.gov/iwc/minimumwagehistory.htm).

[8] In the event Plaintiff was able to prove two hours of unpaid overtime wages per week per employee for all Putative Class Members, the damages would total $4,345,856.38, using the class time period and each putative class member's hourly pay rate. *See* Kiefer Decl. ¶ 9.

    c.    <u>Third Cause of Action – Failure to Provide Lawful Meal Periods</u>: Plaintiffs allege that "[f]or the four (4) years preceding the filing of this lawsuit, Defendants failed to provide Plaintiffs and Class Members timely and uninterrupted first meal periods of not less than thirty (30) minutes within the first five hours of a shift," and that "as a matter of policy and practice . . . the Class members were also not provided second meal periods on days when shifts exceeded ten hours (and twelve hours)." Complaint at ¶¶ 87, 90. Plaintiffs further assert that they and Putative Class Members "were not properly paid one hour of pay at their regular rate for each day that a meal period was not lawfully provided." Complaint at ¶ 89. Given these purported violations, Plaintiffs claim they and the Putative Class Members "are entitled to recover one (1) hour of premium pay for each day in which a meal period violation occurred." Complaint at ¶ 92. Thus, based on the allegations in the Complaint, it is plausible that Plaintiffs are seeking to recover at least one meal period premium per week per employee for all Putative Class Members, which would place over **$1,448,618.79** in controversy in connection with their meal period claim, using the class time period and each putative class member's hourly pay rate.[9] Kiefer Decl. at ¶ 10.

    d.    <u>Fourth Cause of Action – Failure to Authorize and Permit Lawful Rest Periods</u>: Plaintiffs allege that Defendant failed "to authorize and permit Plaintiffs and the Class Members to take a lawful, net ten (10) minute rest period free from work duties every four (4) hours or major fraction thereof worked, including failure to provide two (2) total rest periods on six to ten hour shifts and three (3) total ten (10) minute rest periods on days on which Plaintiffs and the other Class Members work(ed) work [sic] a third rest period for shifts in excess of ten (10) hours." Complaint at ¶ 101. Plaintiffs further allege "Defendants did not pay Plaintiffs one additional hour of pay at their regular rate of pay for each day that a rest period violation occurred," and "other members of the Class endured similar violations as a result of Defendants' rest period policies and practices and Defendant did not pay said Class Members premium pay as required by law." Complaint at ¶ 100. Thus, based on the allegations in the Complaint, it is plausible that Plaintiffs are seeking to recover at least one rest period premium per week per employee for all Putative Class

---

[9]     In the event Plaintiff was able to prove two noncompliant meal periods per week per employee for all Putative Class Members, the damages would total $2,897,237.58, using the class time period and each putative class member's hourly pay rate. *See* Kiefer Decl. ¶ 10.

Members, which would place over **$1,448,618.79** in controversy in connection with their rest period claim, using the class time period and each putative class member's hourly pay rate.[10] Kiefer Decl. at ¶ 11.

  e. <u>Sixth Cause of Action – Failure to Timely Pay Wages Owed at Separation</u>: Plaintiffs derivatively assert Defendant independently failed to timely pay the earned wages of Putative Class Members upon separation. Complaint at ¶¶ 111-13. During the applicable three-year statute of limitations period (June 27, 2019 to present), 260 Putative Class Members have been terminated, resigned, or have otherwise separated from their employment with Defendant. Kiefer Decl. at ¶ 13. Thus, based on the allegations in the Complaint, it is plausible that Plaintiffs have placed over **$984,129.60** in controversy in connection with their claims for waiting time penalties, using each putative class member's daily rate for each day up to thirty days after their separation from employment.[11] *Id.*

  f. <u>Seventh Cause of Action – Failure to Reimburse Necessary Expenses</u>: Plaintiffs allege that they and Putative Class Members "were required to incur expenses in the performance of their assigned job duties, including for cellular phone usage and applications," and "Defendants did not reimburse Plaintiff or the Plaintiff's subclass for such expenses." Complaint at ¶¶ 117, 118. Thus, based on the allegations in the Complaint, it is plausible that Plaintiffs are seeking to recover an average of at least $5.00 per week for all Putative Class Members, which would place **$319,845** in controversy in connection with their expense reimbursement claim ($5.00 per week x 63,969 workweeks). *See* Kiefer Decl. at ¶ 8.

  g. <u>Eighth Cause of Action – Knowing and Intentional Failure to Comply with Itemized Employee Wage Statement Provisions</u>: Plaintiffs assert Defendant derivatively failed to provide Putative Class Members with accurate itemized wage statements for all wages in writing showing: "(1) gross wages earned, (2) total hours worked by the employee. . . (4) all deductions. . . (5) net wages earned,

---

[10] In the event Plaintiff was able to prove two noncompliant rest breaks per week per employee for all Putative Class Members, the damages would total $2,897,237.58, using the class time period and each putative class member's hourly pay rate. *See* Kiefer Decl. ¶ 11.

[11] Plaintiffs' sixth cause of action in the Complaint contends "Plaintiffs and Class Members are entitled to compensation for all forms of wages earned, including but not limited to minimum wages, overtime, sick pay, and premium meal and rest period compensation, but to date have not received such compensation." Complaint at ¶ 111. Based on a plausible reading of the Complaint, Plaintiffs are seeking to recover waiting time penalties for any Putative Class Member who was subjected to any of the alleged violations set forth in the Complaint's first through fourth causes of action and separated from their employment with Defendant during the applicable statute of limitations period.

(6) the inclusive dates of the period for which the employee is paid, (7) the name of the employee and only the last four digits of his or her social security number or an employee identification number other than a social security number, (8) the name and address of the legal entity that is the employer, and (9) all applicable hourly rates in effect during each the pay period and the corresponding number of hours worked at each hourly rate by the employee . . . ." Complaint at ¶ 121. Plaintiffs further contend Defendants knowingly and intentionally failed to "maintain and preserve, in a centralized location, among other items, records showing the names and addresses of all employees employed and payroll records showing the hours worked daily by, and the wages paid to, its employees." Complaint at ¶ 123. Given these purported violations, Plaintiffs claim they and Putative Class Members "are each entitled to recover up to a maximum of $4,000.00." Complaint at ¶ 129. During the one-year statute of limitations period mandated under Labor Code section 226 (i.e., June 27, 2021 to the present), McKesson has issued in excess of 8,972 bi-weekly wage statements to Putative Class Members. Kiefer Decl. at ¶ 12. Thus, based on the allegations in the Complaint, it is plausible that Plaintiffs have placed over **$865,400** in controversy in connection with their wage statement claim ($50 per first wage statement x 636 Putative Class Members who worked between June 27, 2021 and July 30, 2022, plus $100 per each subsequent wage statement x 8,336 pay periods worked by Putative Class Members between June 27, 2021 and July 30, 2022, up to a maximum of $4,000 per Putative Class Member). *See* Labor Code § 226(e)(1); *see also Moppin v. Los Robles Reg'l Med. Ctr.*, No. EDCV 15-1551 JGB (DTBx), 2015 U.S. Dist. LEXIS 129574, at *10 (C.D. Cal. Sep. 24, 2015) (district court finding that a 100% violation rate was justified because the plaintiff there asserted in her complaint that "at all relevant times herein, defendants intentionally and willfully failed to furnish plaintiff and the class members with accurate wage statements," thereby accusing defendants of "issuing inaccurate wage statements 'at all times' and in regards to both Plaintiff and the class members"); *Lucas*, 2018 U.S. Dist. LEXIS 78510, at *25 (noting that "it is not unreasonable to assume that, with this many violations alleged by Plaintiff, every one of the wage statements issued during the one-year period could very likely have been noncompliant").

28. Plaintiffs also seek an unspecified amount of attorneys' fees in connection with their putative class action, which the Court must consider and include in the amount in controversy. Complaint at ¶¶ 73, 84, 93, 102, 103, 114, 119, 129, 136, Prayer for Relief. *Solorzano v. Alsco Inc.*,

2021 U.S. Dist. LEXIS 129517 at *3 (C.D. Cal. July 12, 2021) ("Future attorney's fees must be included in the amount in controversy.") (citations omitted). Attorneys' fee awards in California wage-hour class actions can easily total several hundred thousands of dollars or more. *See, e.g.*, *McGuigan v. City of San Diego,* 183 Cal. App. 4th 610, 638 (2010) (noting attorneys' fees paid in settlement of $1.6 million); *Pellegrino v. Robert Half Int'l, Inc.*, 182 Cal. App. 4th 278, 287, 296 (2010) (affirming $558,926.85 in attorneys' fees in exemption misclassification class case, but reversing as to multiplier); *Vasquez v. California*, 45 Cal. 4th 243, 249 (2008) (noting award of $435,000 in attorneys' fees for class claims involving failure to pay wages, liquidated damages, penalties and waiting time penalties). Moreover, the Ninth Circuit recently concluded "that the amount in controversy is not limited to damages incurred prior to removal—for example, it is not limited to wages a plaintiff-employee would have earned before removal (as opposed to after removal). Rather, the amount in controversy is determined by the complaint operative at the time of removal and encompasses all relief a court may grant on that complaint if the plaintiff is victorious." *Chavez v. JPMorgan Chase & Co.,* 888 F.3d 413, 414-15 (9th Cir. 2018); *see also Lucas*, *supra*, 2018 U.S. Dist. LEXIS 78510 at *32 ("unaccrued post-removal attorneys' fees can be factored into the amount in controversy"); *Baker v. Tech Data Corp.*, 2022 U.S. Dist. LEXIS 66950 at *4 (C.D. Cal. Apr. 11, 2022) ("Recent estimates for the number of hours expended through trial for employment cases in this district have ranged from 100 to 300 hours."); *Solorzano*, *supra*, 2021 U.S. Dist. LEXIS 129517 at *3-4 (demonstrating courts regularly adopting a $300 per hour rate for attorneys' fees in employment actions).

29.   "Courts in this circuit have held that, for purposes of calculating the amount in controversy in a wage-and-hour class action, removing defendants can reasonably assume that plaintiffs are entitled to attorney fees valued at approximately twenty-five percent of the projected damages." *Fong v. Regis Corp.*, No. C 13-04497 RS, 2014 U.S. Dist. LEXIS 275 at *23 (N.D. Cal. Jan. 2, 2014); *see also Herrera v. Carmax Auto Superstores Cal., LLC*, No. EDCV-14-776-MWF (VBKx), 2014 U.S. Dist. LEXIS 188729 at *12 (C.D. Cal. June 12, 2014) ("Substantial authority supports a 'benchmark' 25 percent attorneys' fees figure to be added to any claim for which attorneys' fees are available."); *Hamilton v. Wal-Mart Stores, Inc.,* No. ED CV 17-01415-AB (KKx), 2017 U.S. Dist. LEXIS 162856 at *16 (C.D. Cal. Sep. 29, 2017) ("The Ninth Circuit has allowed an estimate fee award of 25% of a

plaintiff's damages in calculating the amount in controversy under CAFA."); *Gutierrez v. Stericycle, Inc.*, No. LA CV15-08187 JAK (JEMx), 2017 U.S. Dist. LEXIS 20975 at *51 (C.D. Cal. Feb. 14, 2017) ("it is appropriate to include in the calculation of the amount in controversy a potential fee award of 25% of the value of certain of the substantive claims").

30. The Court should therefore consider attorneys' fees of at least **$2,161,714.59**, an estimate at 25% of the aggregate amount in controversy calculated in Paragraph 27 above. *See, e.g.*, *Oda v. Gucci Am., Inc.,* 2015 U.S. Dist. LEXIS 1672 at *11-13 (C.D. Cal. 2015) (finding the defendant's assumptions regarding attorneys' fees to be "reasonable" on removal where the defendant stated "Plaintiffs would recover a 25 percent fee" totaling "$1,329,245," based on "the amount in controversy before attorneys' fees" of "$5,316,978").

31. Thus, for the reasons discussed above, and without conceding or admitting to the underlying merit of Plaintiffs' claims, it is plausible that the aggregate amount in controversy in connection with Plaintiffs' putative class claims (**$10,808,572.96**[12]) surpasses the $5,000,000 jurisdictional threshold required under CAFA.

## NOTICE TO ALL PARTIES AND STATE COURT

32. In accordance with 28 U.S.C. § 1446(d), the undersigned counsel certifies that a copy of this Notice of Removal and all supporting papers will be served promptly on Plaintiffs' counsel and filed with the Clerk of the Los Angeles County Superior Court. Therefore, all procedural requirements under 28 U.S.C. § 1446 will be followed and satisfied.

## CONCLUSION

33. Based on the foregoing, McKesson hereby removes the above-captioned action from the Los Angeles County Superior Court to this Court based on CAFA requirements (28 U.S.C. §§ 1332(d), 1441, 1446 and 1453), and respectfully requests that this Court retain jurisdiction for all further proceedings.

///

///

---

[12] This amount does not include potential damages for Plaintiffs' fifth cause of action for failure to timely pay wages due and payable during employment pursuant to California Labor Code Section 210, which would further increase the amount in controversy in connection with Plaintiffs' putative class claims.

| | | |
|---|---|---|
| 1 | Dated: August 11, 2022 | JACKSON LEWIS P.C. |
| 2 | | |
| 3 | | By:   */s/ Buck N. Haddix*   _____ |
| | | Mia Farber |
| 4 | | Nicky Jatana |
| | | Buck N. Haddix |
| 5 | | |
| | | Attorneys for Defendant |
| 6 | | MCKESSON CORPORATION |

17